**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CARGO ON DEMAND, INC.,

Plaintiff,

vs.

POLAR AIR CARGO WORLDWIDE, INC.,

Defendant.

1:22-cv-10243 (JMF)

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT POLAR AIR CARGO WORLDWIDE, INC.'S
## MOTION TO DISMISS THE COMPLAINT

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendant Polar Air Cargo*
*Worldwide, Inc.*

January 20, 2023

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

STATEMENT OF FACTS ................................................................................................................. 3

ARGUMENT ...................................................................................................................................... 6

I.      LEGAL STANDARD .......................................................................................................... 6

II.     COUNT ONE (SUBSTANTIVE RICO) MUST BE DISMISSED BECAUSE
        COD FAILS TO PLEAD A RACKETEERING ENTERPRISE THAT IS
        DISTINCT FROM POLAR. .................................................................................................. 7

        A.      Applicable Law ........................................................................................................ 7

        B.      Discussion ................................................................................................................ 8

III.    COUNT ONE (SUBSTANTIVE RICO) MUST BE DISMISSED BECAUSE
        COD FAILS TO PLEAD A PATTERN OF RACKETEERING ACTIVITY ................. 11

IV.     COUNT ONE (SUBSTANTIVE RICO) MUST BE DISMISSED BECAUSE
        COD FAILS TO PLEAD FRAUD WITH SUFFICIENT PARTICULARITY ............... 15

V.      COUNT TWO (RICO CONSPIRACY) MUST BE DISMISSED FOR THE
        SAME REASONS AS COUNT ONE. ................................................................................ 18

VI.     COUNTS THREE, FOUR, AND FIVE (FRAUD, AIDING AND ABETTING,
        AND CONSPIRACY) MUST BE DISMISSED BECAUSE COD FAILS TO
        PLEAD FRAUD WITH SUFFICIENT PARTICULARITY ........................................... 19

VII.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
        JURISDICTION OVER COD'S COMMON LAW CLAIMS .......................................... 19

VIII.   CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................6

*Black v. Ganieva*, No. 21 Civ. 8824 (PAE), 2022 WL 2374514 (S.D.N.Y. June 30, 2022) ..................................................................................................15

*Bongiorno v. Baquet*, No. 20-CV-7288 (LJL), 2021 WL 4311169 (S.D.N.Y. Sept. 20, 2021) ..................................................................................................20

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001).......................7

*City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425 (2d Cir. 2008).................8

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013)..............................7

*D.R.S. Trading Co., Inc. v. Fisher*, No. 01 Civ. 8028 (WHP), 2002 WL 1482764 (S.D.N.Y. July 10, 2002) ....................................................................11, 12

*de La Roche v. Calcagnini*, No. 95 Civ. 6322 (RWS), 1997 WL 292108 (S.D.N.Y. June 3, 1997)..............................................................................................11

*Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir.1996)..........................9, 19

*Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132 (2d Cir. 2018) ........13

*Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*, No. 20 Civ. 9784 (PGG) (JW), 2022 WL 901660 (S.D.N.Y. Mar. 28, 2022) ..................................10

*First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576 (S.D.N.Y. 2002) ......................................................................................7

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ...............11, 18, 20

*Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997)..............................9

*Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951 (7th Cir. 1996) ..........................8

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463 (2d Cir. 1995) ...............11, 12

*Gross v. Waywell*, 628 F. Supp. 2d 475 (S.D.N.Y. 2009) ..............................14

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) ...............................8

*In re Am. Exp. Co. S'holder Litig.*, 840 F. Supp. 260 (S.D.N.Y. 1993) .......................................13

*In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994) ......................................................14

*Inspired Cap., LLC v. Conde Nast*, 803 F. App'x 436 (2d Cir. 2020)..........................................19

*Johnson v. Nextel Commc'ns, Inc.*, 763 F. App'x 53 (2d Cir. 2019)...........................................18

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) .........................................13

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ..................................................15, 17, 19

*Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999) ................................................................6

*Nassau-Suffolk Ice Cream, Inc. v. Integrated Res., Inc.*, 662 F. Supp. 1499
    (S.D.N.Y. 1987) ...................................................................................................................................14

*Nat'l Union Fire Ins. Co. v. Archway Ins. Servs. LLC*, No. 11 Civ. 1134
    (WHP), 2012 WL 1142285 (S.D.N.Y. Mar. 23, 2012)............................................................19

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000)...................................................................................15

*NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998) .........................................................................9

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994) ...............................................................................6

*Reves v. Ernst & Young*, 507 U.S. 170 (1993).....................................................................................8

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339
    (2d Cir. 1994).................................................................................................................................7, 8

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ..........................................................15, 17, 19

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629 (2d Cir. 1996) .........................19

*Thai Airways Int'l Ltd. v. United Aviation Leasing B.V.*, 842 F. Supp. 1567
    (S.D.N.Y. 1994) ...................................................................................................................................15

*U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650 (2d Cir.
    2016) .......................................................................................................................................................18

*U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199 (2d Cir. 2017)........................................................7, 9

*United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995).................................................................12

*United States v. Turkette*, 452 U.S. 576 (1981) .................................................................................10

*Williams v. Equitable Acceptance Corp.*, 443 F. Supp. 3d 480 (S.D.N.Y. 2020) ..................15, 17

*Wisdom v. First Midwest Bank*, 167 F.3d 402 (8th Cir. 1999) ..................................................14

**Statutes & Rules**

18 U.S.C. § 1952 ..................................................................................................13

18 U.S.C. § 1961(1) ..............................................................................................13

18 U.S.C. § 1961(3) ................................................................................................7

18 U.S.C. § 1961(4) ................................................................................................7

18 U.S.C. § 1962(c) ............................................................................................1, 7

28 U.S.C. § 1367 ....................................................................................................6

28 U.S.C. § 1367(c)(3) ..........................................................................................20

Fed. R. Civ. P. 9(b) ....................................................................................1, 6, 15, 19

Fed. R. Civ. P. 12(b)(1) ................................................................................1, 6, 19

Fed. R. Civ. P. 12(b)(6) ......................................................................................1, 6

In its Complaint, Plaintiff, Cargo on Demand, Inc. ("COD"), alleges claims against Defendant Polar Air Cargo Worldwide, Inc. ("Polar") under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and New York common law.  Polar hereby submits this memorandum of law in support of its motion to dismiss COD's Complaint in its entirety pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

The Complaint alleges that six former members of Polar senior management ("Polar Management") conspired to overcharge one of Polar's freight forwarder customers, COD, by demanding that COD make payments to them, both directly and through companies of which they were the beneficial owners, as a condition of doing business with Polar.  Knowing full well that this ordinary business dispute does not belong in federal court, COD dresses it up as a RICO case, in an obvious effort to avail itself of the jurisdiction of this Court and enhanced RICO damages.  However, as courts have repeatedly recognized, RICO does not provide a private cause of action in every lawsuit that alleges concerted activity by multiple parties; rather, the statute itself provides several hurdles that must be overcome before a civil RICO suit can proceed.  18 U.S.C. § 1962(c).  The Complaint in this case does not clear those hurdles.

COD defines its alleged "racketeering enterprise" as consisting of Polar Management and the companies that those executives exploited in furtherance of their alleged scheme, namely Polar and the entities to which the executives had COD direct their payoffs, which the Complaint refers to as the "Consulting Companies."  However, a corporate entity, like Polar, cannot be both the defendant and the enterprise itself in a RICO suit; rather, the corporate defendant must be distinct from the alleged enterprise.  Nor can the enterprise consist of the corporate entity (Polar), its employees (Polar Management) and affiliated companies that conduct business at its direction

(the Consulting Companies).  As courts have recognized, a contrary rule would permit an end-run around the distinctness requirement.  After all, corporate entities cannot act except through the actions of their employees, and nearly always act with the assistance of agents and other affiliated companies.  On this basis alone, the RICO counts must be dismissed.

In addition, COD fails to plead a "pattern of racketeering activity."  Most fundamentally, COD fails to plead a predicate act of racketeering.  COD asserts a claim for wire fraud (and also for common law fraud, aiding abetting and conspiracy), but the Complaint does not allege facts sufficient to support the bedrock element of those fraud claims—a false or misleading statement. For example, while the Complaint refers to fees that Polar Management demanded from COD as "consulting fees" and the companies to which those payments were made as "Consulting Companies," it never asserts that anyone actually told COD (falsely) that the payments were intended for consulting.  Likewise, in an attempt to convert COD's purported interpretation of this business dispute into a claim for RICO and fraud, the Complaint contends that to COD, the fees "*seemed akin* to a hotel 'resort fee'." (Compl. ¶ 32 (emphasis added).)  The Complaint, however, never articulates any statement by Polar or Polar Management that led COD to reach this belief. COD also points repeatedly to a statement made by Polar's counsel after the scheme was terminated that several members of Polar Management had been involved in an "illicit . . . payment scheme" (*e.g.*, *id.* ¶¶ 70-73), but does not identify any statements previously made by Polar Management that the payments were in fact legitimate.  Polar maintains to this day that the payments were illicit.  However, that is not because, as COD contends without any specificity, they were procured by fraud *on COD*, but rather because they were the result of embezzlement by Polar Management in which Polar Management siphoned cargo fees away from Polar and to themselves, in which COD was complicit.

2

The alleged facts present, at most, a business dispute between COD and Polar management—in which Polar itself was a victim by, as the Complaint itself admits, receiving "deceptively low" cargo fees as a result of Polar Management's scheme—rather than a "pattern of racketeering activity." (Compl. ¶ 106.) Polar Management is alleged to have required COD and one other freight forwarder to make payments that COD now contends were unlawful. That is insufficient as a matter of law to allege a "pattern" of "racketeering activity."

In sum, the Complaint should be dismissed in its entirety. COD's RICO claims (both substantive and conspiracy) should be dismissed because (i) COD failed adequately to plead a racketeering enterprise (Part I, *infra*), (ii) COD failed adequately to plead a pattern of racketeering activity (Part II, *infra*), and (iii) COD failed to plead fraud with sufficient particularity (Part III, *infra*). The common law fraud (both substantive as well as aiding and abetting and conspiracy) claims should also be dismissed for failure to plead with particularity (Part IV, *infra*), and because there is no reason for this Court to exercise jurisdiction over these and other state law claims once the federal claims are dismissed, COD's common law claims should be dismissed so that they, and any common law counterclaims brought by Polar against COD, can be adjudicated in New York state court. (Part V, *infra*.)

## STATEMENT OF FACTS[1]

Polar is a joint venture between Atlas Air Worldwide Holdings, Inc. and DHL Express. (Compl. ¶ 16.) It sells cargo space on its aircraft to freight forwarder customers such as COD, which then sell that space to their own customers. (*Id.* ¶¶ 11, 17.) The Complaint alleges that during the time period relevant to COD's allegations, Polar's operations were overseen and

---

[1] Polar disputes many of the facts alleged in the Complaint and assumes them to be true only for purposes of this motion.

controlled by one or more of the following individuals, which COD defines as "Polar Management":  Lars Winkelbauer (Chief Operating Officer); Thomas Betenia (Vice President of Sales and Marketing); Abilash Kurien (Vice President of Marketing, Revenue Management and Network Planning); Carlton Llewellyn (Vice President of Operations Systems Performance and Quality); Robert Schirmer (Senior Director, Customer Service & Capacity); and Frank Filimaua (Global Senior Sales Director).  (*Id.* ¶ 3.)[2]  None of these individuals are currently employed at Polar.  (*Id.* Ex. C.)

In 2014, approximately one year after COD began doing business with Polar, the two companies entered into a Blocked Space Agreement ("BSA") pursuant to which a specified allotment of Polar's cargo space on certain air routes at specified rates was committed to COD and its customers.  (*Id.* ¶ 17.)  The BSA was in effect and renewed over the course of seven years, until 2021.  (*Id.* ¶¶ 17-18.)  COD alleges that during the negotiation of the BSA in 2014, Polar Management advised COD that in order to utilize its cargo space allotment under the BSA, COD was required to pay Polar (via Polar Management), and what COD identifies as "certain third-party consulting companies connected to Polar," additional "consulting fees" separate and apart from the contractual BSA cargo fees that were paid directly to Polar.  (*Id.* ¶ 21.)  COD further alleges that it was advised and instructed by Polar Management that these additional fees were part of Polar's regular way of doing business with all customers that had annual BSA contracts with Polar.  (*Id.* ¶¶ 31, 105.)  COD alleges that it believed the fees were mandatory and were not included in the initial quoted rate, but were rather charged at either a flat amount or percentage basis of COD's monthly cargo volume and reflected in the final bill.  (*Id.* ¶ 32.)  COD

---

[2] While not all members of Polar management are alleged to have participated in the scheme described in the Complaint, Polar refers to these six executives as "Polar Management" in this motion to dismiss in keeping with the convention in the Complaint.

contends that its payment of the "consulting fees" to Polar Management benefited Polar by allowing it to increase freight volumes and thus generate additional off-book cargo revenue and profits by giving the appearance of offering lower rates, in comparison to Polar's competitors, than the full cost of Polar's services (which amounted to the BSA fees paid to Polar plus the consulting fees paid to Polar Management).  (*Id.* ¶ 33, 106-108.)

COD alleges that it paid these fees both directly to Polar Management as well as to the Consulting Companies that COD contends were affiliated with and connected to both Polar and Polar Management.  (*Id.* ¶¶ 21, 23-26, 41, 44.)  On a monthly basis, a member of Polar Management would calculate the amount of consulting fees owed by COD and would instruct COD how to allocate the money among Polar Management and the Consulting Companies.  (*Id.* ¶¶ 40-41.)  COD alleges that over the course of seven years, it paid consulting fees to Polar (via Polar Management) of nearly four million dollars.  (*Id.* ¶ 21.)

In August 2021, after learning of the payments COD was making to Polar Management, Polar provided COD the contractually required 60-day notice that it was terminating the BSA.  (*Id.* ¶ 53, Ex. C.)  Around that same time, Polar terminated each member of Polar Management for cause and Mr. Winkelbauer advised COD to cease making the additional "consulting fee" payments.  (*Id.* ¶¶ 51, 53, Ex. C.)  On December 20, 2021, Polar completed the wind down of its business relationship with COD by removing all of COD's cargo space on Polar's aircraft.  (*Id.* ¶ 63.)[3]

---

[3] The Complaint includes various allegations regarding the parties' conduct after Polar provided notice to COD that it was terminating the BSA (for example, Polar reducing COD's cargo space, reporting COD's payment defaults to the International Air Transport Association (IATA), denying COD access to Polar's e-booking platform, placing COD on a cash account and pre-pay arrangement, and Polar allegedly using commercially-sensitive information that COD disclosed to Polar to solicit COD' customers and business contacts).  (*Id.* ¶¶ 57-58.)  As Polar explained to COD in connection with rejecting COD's request for settlement prior to filing this Complaint

## ARGUMENT

### I.     LEGAL STANDARD

Polar moves to dismiss Counts One through Five pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  Under Rule 12(b)(6), a complaint should be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.  Pursuant to Rule 9(b), when a complaint alleges fraud, the circumstances constituting fraud must be stated with particularity.  When a plaintiff alleges a RICO claim for which fraud is the predicate illegal act, "Rule 9(b) calls for the complaint to 'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (citations omitted).

Polar further moves to dismiss Counts Three through Eight pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction.  These counts are all state law claims over which there is no independent basis for this Court to exercise jurisdiction.  Pursuant to 28 U.S.C. § 1367, district courts "may decline to exercise supplemental jurisdiction over a [state law] claim" if "the district court has dismissed all claims over which it has original jurisdiction." *Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994).  Accordingly, once "the RICO

---

(*Id.* Ex. C), Polar's conduct in winding down its customer relationship with COD and rebuilding its sales organization and customer base after it terminated its relationship with the individuals and entities involved in the payment scheme was consistent with all applicable laws and business obligations.  Because none of COD's allegations regarding Polar's conduct after COD stopped paying consulting fees to Polar Management are relevant to COD's RICO claims, which are the principal subject of this motion to dismiss, they are not repeated here.

claims have been dismissed, the Court is not obliged to exercise supplemental jurisdiction" over the remaining common law claims.  *First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576 (S.D.N.Y. 2002).

## II.   COUNT ONE (SUBSTANTIVE RICO) MUST BE DISMISSED BECAUSE COD FAILS TO PLEAD A RACKETEERING ENTERPRISE THAT IS DISTINCT FROM POLAR.

### A.   Applicable Law

RICO makes it unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c).  A "person" is "any individual or entity capable of holding a legal or beneficial interest in property," and an "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. §§ 1961(3), 1961(4).  Therefore, to allege a claim under RICO, a plaintiff must plead "the existence of two distinct entities:  (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017) (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)).

While a corporate entity can be sued as a person that is a member of an enterprise, RICO's distinctness requirement mandates that the culpable person and the enterprise be different, such that "the same entity cannot be both the RICO person and the enterprise."  *Id.*  As the Second Circuit has recognized, "[w]e have long since rejected the idea that a RICO enterprise may consist 'merely of a corporate defendant associated with its own employees or agent carrying on the regular affairs of the defendant.'"  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115,

121 (2d Cir. 2013) (citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994)).  The corporate defendant must be distinct from the enterprise because RICO liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise*'s affairs,' not just their *own* affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

Generally, the "dual requirements of (1) distinctness and (2) the proof needed to demonstrate an association-in-fact [enterprise], work in tandem to weed out claims dressed up as RICO violations but which are not in fact."  *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 447 (2d Cir.), *rev'd and remanded sub nom. Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010); *see also Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 963 (7th Cir. 1996) ("Our RICO jurisprudence is replete with examples of failed attempts to dress up state law claims as suave RICO cases using the expansive definition of mail and wire fraud.").

**B.    Discussion**

COD's alleged racketeering enterprise begins and ends with Polar.  The payment scheme at the heart of the Complaint is alleged to have been conducted by Polar Management, in the course of their employment for Polar, on behalf of Polar and for the benefit of Polar.  (Compl. ¶¶ 28, 31, 38, 97, 106-09.)  The Complaint itself alleges that Polar derives its liability vicariously from the acts of Polar Management, as "the actions of corporate directors and officers are attributable to the corporate entity."  (*Id.* ¶¶ 92-93.)  However, because "employees in association with the corporation do not form an enterprise distinct from the corporation," *Riverwoods*, 30 F.3d at 344, Polar and Polar Management cannot constitute the racketeering enterprise of which Polar is a member

COD attempts to circumvent the distinctness requirement by adding the Consulting Companies, which COD claims that Polar Management used to receive the fraudulent payments, as members of the enterprise. This enterprise, as alleged, still fails to meet RICO's essential element of distinctness, as an alleged enterprise that consists solely of a defendant corporation, its employees and other entities that operate at its direction in the course of carrying out its business is not a distinct enterprise as a matter of law. *See*, *e.g.*, *Fedex Corp.*, 871 F.3d at 206 (holding that plaintiff "may not circumvent the distinctness requirement 'by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant'—that consists, in other words, of a corporate defendant 'corrupting itself'" (internal citation omitted)); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir.1996) (affirming the dismissal of RICO claim on the basis that the distinctness requirement was not met, where all members of the enterprise "were acting within the scope of a single corporate structure, guided by a single corporate consciousness"), *vacated on other grounds*, 525 U.S. 128 (1998); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997) (Posner, J.) (holding that a car manufacturer "plus its dealers and other agents (or any subset of the members of the corporate family) do not constitute an enterprise within the meaning of the [RICO] statute").

Here, the Complaint does not allege that either Polar Management or the Consulting Companies engaged in conduct that was distinct from the Polar business. Although Polar vigorously denies this and other allegations, COD contends that Polar, Polar Management, and the Consulting Companies together operated as "Polar" to generate revenue for Polar and compensate Polar Management through the consulting fees paid by all Polar customers with BSAs. (Compl. ¶¶ 21, 31.) The factual basis of COD's entire Complaint—which, again, is

accepted as true only for purposes of this motion to dismiss—is predicated on its core allegation that the individual and corporate members of the enterprise operated as a unified structure guided by a single corporate consciousness:  Polar's.  As alleged, all of the racketeering activity was conducted as part of Polar's business and to benefit Polar.  COD alleges (again, incorrectly) that the racketeering activity was the "regular way of doing business for Polar," and that Polar's business allegedly benefitted from the consulting fees by allowing it and its executives to earn off-book income.  (*Id.* ¶¶ 106-108.)  These enterprise allegations fail to satisfy RICO's distinctness requirement.

To the extent COD responds that the Consulting Companies are distinct from Polar because they only participated in the allegedly fraudulent portion of Polar's business activity, that argument too would fail.  The law does not recognize an enterprise when it is made up of members who are exclusively linked by their racketeering activity; on the contrary, it is well-established that the RICO enterprise must exist "separate and apart from the pattern of activity in which it engages."  *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*, No. 20 Civ. 9784 (PGG) (JW), 2022 WL 901660 at *21 (S.D.N.Y. Mar. 28, 2022) (RICO plaintiff must allege that the members of the enterprise "formed any sort of coherent entity beyond simply working together to perpetrate the [alleged misconduct] and related mail and wire fraud").

As the alleged enterprise is Polar, its employees and affiliated companies that allegedly were acting on its behalf to receive the alleged improper payments, it is not distinct from Polar and thus the RICO claim cannot be sustained.  Accordingly, the Complaint's substantive RICO claim must be dismissed for failure to allege a racketeering enterprise.

### III.   COUNT ONE (SUBSTANTIVE RICO) MUST BE DISMISSED BECAUSE COD FAILS TO PLEAD A PATTERN OF RACKETEERING ACTIVITY

In order to plead a "pattern of racketeering activity," a RICO plaintiff "must plead at least two predicate acts . . . and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995). As a point of differentiation between RICO claims and ordinary common law fraud claims, a RICO plaintiff must plead a pattern of racketeering activity either through open ended-continuity, meaning "past criminal conduct coupled with a threat of future criminal conduct," or close-ended continuity, which is "past criminal conduct extending over a substantial period of time." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004). Here, COD fails to plead either open-ended or close-ended continuity.

Proving open-ended continuity requires a showing that "there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Id.* COD cannot do so, as Polar terminated the employment of all members of Polar Management as well as the business relationship with COD. (Compl. ¶ 63, Ex. C.) The Complaint vaguely alleges that "Polar also appears to have sent materially-identical termination communications to the other freight forwarders known to COD," including Fato LLC, *id.* ¶¶ 66, 68, but by acknowledging that any other "victims" no longer do business with Polar, there is no allegation of any threat of future criminal conduct, and thus no pleading of open-ended continuity. *See Satinwood*, 385 F.3d at 180; *see also D.R.S. Trading Co., Inc. v. Fisher*, No. 01 Civ. 8028 (WHP), 2002 WL 1482764, at *5 (S.D.N.Y. July 10, 2002) ("[T]here is no open-ended continuity because there is no likelihood that the fraud against [the plaintiffs] will continue since [one of the victims of the racketeering activity] has terminated its relationship with defendants"); *de La Roche v. Calcagnini*, No. 95 Civ. 6322 (RWS), 1997 WL 292108 at *10 (S.D.N.Y. June 3,

11

1997) ("[Plaintiff] cannot claim open-ended continuity; once his business relationship with [defendant] ended, the fraud necessarily ended as well").  This is especially true "in cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful," such as Polar's business. *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995).

Nor has COD pled close-ended continuity.  To determine whether a RICO plaintiff has pled close-ended continuity, courts consider a number of factors beyond the mere passage of time, including "the number and variety of [predicate] acts, the number of participants, the number of victims, and the presence of separate schemes." *GICC Cap. Corp.*, 67 F.3d at 467. "When the fraudulent conduct alleged involves such a limited number of perpetrators, small number of victims, and limited goal, it cannot support a claim of open-ended or closed-ended continuity." *Fisher*, 2002 WL 1482764 at *4.

Here, COD alleges a single scheme (COD's payment of consulting fees to Polar, via Polar Management, to allegedly facilitate excess profits to Polar and excess compensation to Polar Management), with—at most—six individual perpetrators[4] and two specified victims.[5]  As for the number of predicate acts, COD alleges that Polar "committed and caused others to

_____

[4] COD names six former Polar executives and defines them as "Polar Management" for purposes of its Complaint, but makes specific allegations against only four of them (Lars Winkelbauer, Abilash Kurien, Thomas Betenia and Frank Filimaua).  (Compl. ¶¶ 3, 24-25, 40-41, 51, 71, 126, 129, 148.)  Indeed, the vast majority of COD's factual allegations are lodged only against Mr. Winkelbauer, using information provided by Polar's counsel for the purpose of explaining why it rejected COD's pre-litigation settlement demand.  (*See, e.g.*, Compl. ¶ 126, Ex. B.)  The Complaint is silent as to Carlton Llewellyn and Robert Schirmer.

[5] COD refers vaguely to other customers "known to COD" who were terminated around the same time, but does not identify such customers or allege that they paid consulting fees.  (Compl. ¶ 68.)  Similarly, COD alleges that Polar Management represented that the consulting fees paid by COD were also required of "all customers that had annual BSA contracts with Polar" but does not allege how many of Polar's customers have BSAs or whether any such BSA customers actually paid consulting fees to Polar Management.  (*Id.* ¶ 31.)

commit multiple acts of wire fraud and tax evasion" and "committed violations of [the Travel Act,] 18 U.S.C. § 1952."  (Compl. ¶¶ 112-113, 131-132.)  As an initial matter, tax evasion is not a racketeering predicate, and thus does not contribute to a "pattern" of racketeering.  18 U.S.C. § 1961(1).  As for violations of the Travel Act, COD alleges that Polar Management used a cargo airline and airports, as well as traveled between states, in order to launder the "consulting fee" payments through their Consulting Companies.  (Compl. ¶¶ 112-113, 131-132.)  However, this allegation is entirely conclusory, as COD offers no detail as to how Polar used its cargo planes, or otherwise traveled between states, so as to launder money.  *See Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss).

The alleged "pattern of racketeering activity," then, boils down to allegations that members of the enterprise effectuated a single scheme involving monthly emails from Polar Management calculating the consulting fee amounts, corresponding monthly requests from Polar Management for payment of the consulting fees as apportioned among the enterprise members, and then monthly wire transfers of such fees from COD to the Consulting Companies and Polar Management.  (Compl. ¶¶ 34, 38, 40-44, 71, 100, 102, 110.)  In considering the number and variety of predicate acts, those wires should not be viewed as separate acts of fraud, as they were all made  to seek or remit payment of the consulting fees that were obtained as part of one scheme, not to engage in additional acts of deceit.  *See*, *e.g.*, *In re Am. Exp. Co. S'holder Litig.*, 840 F. Supp. 260, 264 (S.D.N.Y. 1993) ("When RICO claims are based on predicate acts of mail fraud, innocent mailings may supply the mailing element but continuity must be establish[ed] with reference to the instances of actual deceit.") (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*,

13

926 F.2d 1406, 1414 (3d Cir. 1991) ("Although the mailing is the actual criminal act, the instances of deceit constituting the underlying fraudulent scheme are more relevant to the continuity analysis."), *aff'd*, 39 F.3d 395 (2d Cir. 1994); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 407 (8th Cir. 1999)  ("[M]ailings are insufficient to establish the continuity factor unless they contain misrepresentations themselves. The court must look to the underlying scheme to defraud.")

Accordingly, courts have been reluctant to recognize RICO claims based on mail and wire fraud in furtherance of a single scheme because most instances of business fraud involve the use of mails or wires, and this Court should similarly decline to do so.  *See, e.g.*, *Gross v. Waywell*, 628 F. Supp. 2d 475, 496 (S.D.N.Y. 2009) (dismissing RICO complaint alleging "a single, relatively simple fraudulent scheme with a single purpose: to deceive and steal from two identified victims," where "[t]he predicate acts were all identical—mail and/or wire fraud" and the purpose was to promote the interests of "of the Management Defendants individually rather than to promote the shared objectives of the common racketeering enterprise"); *Nassau-Suffolk Ice Cream, Inc. v. Integrated Res., Inc.*, 662 F. Supp. 1499, 1507 (S.D.N.Y. 1987) (the continuity requirement exists to prevent plaintiffs from pleading everyday fraud as RICO, as "[m]ost substantial business transactions involve two or more uses of the mail [and wires] during negotiations" and "[t]o hold that two such [acts of alleged fraud] are sufficient to constitute a 'pattern of racketeering activity' would be to sweep into federal courts, under RICO, the great majority of actions for fraud in commercial transactions") (citation omitted).

The only factor, then, that even suggests continuous racketeering activity is the duration of the scheme.  However, other than the collection of the fees that are alleged to be the fruit of that single scheme, COD does not plead multiple fraudulent acts on a continuous basis across the

time period in which the scheme was alleged to have taken place.  As such, the lack of continuity of racketeering activity is another basis on which Count One must be dismissed.

## IV.    COUNT ONE (SUBSTANTIVE RICO) MUST BE DISMISSED BECAUSE COD FAILS TO PLEAD FRAUD WITH SUFFICIENT PARTICULARITY

To successfully plead a RICO claim based on predicate acts involving fraud, Rule 9(b)'s heightened pleading standard requires that the circumstances constituting fraud be stated with particularity.  *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000); *see also Thai Airways Int'l Ltd. v. United Aviation Leasing B.V.*, 842 F. Supp. 1567, 1571-72 (S.D.N.Y. 1994) (dismissing a complaint in which the plaintiff's "allegations of mail fraud and wire fraud . . . fall far short of the requirements of Rule 9(b)"); *Black v. Ganieva*, No. 21 Civ. 8824 (PAE), 2022 WL 2374514, at *25 (S.D.N.Y. June 30, 2022) (dismissing RICO allegations in part due to plaintiff's failure to adhere pleading of mail and wire fraud predicate acts to Rule 9(b)'s particularity requirements). The particularity requirement mandates that the plaintiffs:  "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *see also Williams v. Equitable Acceptance Corp.*, 443 F. Supp. 3d 480, 488 (S.D.N.Y. 2020).  In other words, "plaintiffs must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so."  *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).  COD's fraud claim is based on a series of allegations regarding statements made by Polar and Polar Management, none of which are both pled with specificity and alleged to be false or misleading.

COD's fraud claim is predicated primarily on its allegation that Polar's "representation to COD and others, via Polar Management, that payment of a 'consulting fee' was necessary to ship cargo with Polar, at the rates set forth in the BSA constituted a material misrepresentation of fact

which Polar knew to be false." (Compl. ¶ 138.)  COD does not allege who made such statements, when and to whom, or that they were in fact false.  To the contrary, the Complaint is replete with allegations that payment of consulting fees *were in fact* required for COD to ship cargo with Polar.  (*Id.* ¶¶ 21, 23, 32, 40.)  COD points repeatedly to the fact that Polar counsel recently expressed its position that COD's payments to Polar Management were "illicit."  (*See*, *e.g.*, Compl. ¶¶ 70-73; 100-102, Ex. C.)  As noted above, Polar maintains to this day that the payments were illicit, because they were the result of embezzlement from Polar in which COD was complicit.  COD's Complaint does nothing to state or even suggest that the illicit nature of the payments somehow renders the prior statements to COD that such payments were required for it to do business with Polar false or misleading.

COD also cites to monthly correspondence from a member of Polar Management (typically Abilash Kurien, Polar's then-Vice President of Sales and Marketing) directing COD to pay the consulting fees in an amount calculated based on COD's cargo volume with Polar.  The Complaint alleges that "Kurien would further specify, either by email or phone, how to apportion the consulting fee payments that month among various members of Polar Management and the Consulting Companies."  (*Id.* ¶ 40.)  The Complaint then attaches Exhibit A as an example of such statements.  However, nothing in these statements is alleged to be false and, if anything, statements directing COD to make certain payments to Polar Management showed that the fees, at least in part, were being paid to the executives individually.  (*See id.* Ex. A (directing COD to pay $1,000 to "Frank," likely a reference to Frank Filimaua, a member of Polar Management, and to pay 7,823.25 "*per person*") (emphasis added).)

Notably, despite repeated reference to "consulting fees" and the "Consulting Companies," the Complaint is devoid of any statements alleged to have been made by Polar

Management to anyone at COD characterizing the payments or the companies as such. Employees at COD may have believed that these fees were for consulting—although, notably, COD never specifies what sort of consulting they imagined—and that they were "akin to a 'resort fee,'" (*id.* ¶ 32), but such self-serving allegations of mistaken belief do not constitute allegations of fraud.[6]  And certainly the failure to identify any statements that led them to this mistaken belief, when the statements were made and by whom, constitutes a failure to plead fraud with particularity.  *Lerner*, 459 F.3d at 290; *Rombach*, 355 F.3d at 174; *see also Williams*, 443 F. Supp. 3d at 488.

Knowing full well that it can neither plead nor prove that it was defrauded by Polar during the time it paid these fees to Polar Management, COD tries to spin Polar's statements during the termination of its business relationship with COD into fraud.  Specifically, COD alleges that Polar "*intentionally* misled COD when it made subsequent representations to COD that Polar remained COD's 'partner'" and "actively induc[ed] COD to continue shipping virtually all of its cargo traffic with Polar (and even take out loans to do so)" when all the while, Polar had already decided to terminate COD.  (Compl. ¶ 85.)

COD's fraud claim cannot be based on statements made after the alleged scheme to defraud ended, and which are not alleged to have been made in furtherance of the scheme.

---

[6] This particular deficiency in the Complaint is notable because COD's state of mind is a critical issue in this case.  Polar's position is that COD was not misled at all when it made monthly payments to Polar Management, but rather was an active participant in an embezzlement and bribery scheme in which COD and Polar Management diverted a portion of COD's cargo fees to Polar Management, and away from Polar, in exchange for COD receiving favorable treatment in the form of lower rates and guaranteed cargo space, all to the detriment of Polar.  *See* Compl. Ex. C.  Indeed, even COD's Complaint alleges that COD's contractual rates paid to Polar pursuant to the BSA were "deceptively low"—below "the true cost of Polar's services"—in exchange for COD's commitment to make supplemental "consulting" payments to Polar Management.  (*Id.* ¶ 106.)  If any party was defrauded, it was Polar, not COD.

According to COD, at the time these statements allegedly were made, Polar Management had already instructed COD to stop making consulting fee payments, and Polar "already decided to terminate its relationship with COD." (*Id.* ¶¶ 51, 144.) COD both fails to explain how any statements made by Polar Management at this late date were false or misleading, and of critical significance, how the statements furthered the alleged scheme to defraud. A fair reading of the Complaint is that COD has issues with how Polar wound down its business relationship with COD, but such allegations fall far short of pleading fraudulent intent or conduct with respect to the specific alleged statements made to COD in connection with the prior alleged payment scheme. *See U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 658 (2d Cir. 2016) ("It is emphatically the case—and has been for more than a century—that a representation is fraudulent only if made with the contemporaneous intent to defraud—*i.e.*, the statement was knowingly or recklessly false and made with the intent to induce harmful reliance.").

## V.   COUNT TWO (RICO CONSPIRACY) MUST BE DISMISSED FOR THE SAME REASONS AS COUNT ONE.

As a general matter, a RICO conspiracy claim fails if the substantive claim to violate RICO fails. *See Johnson v. Nextel Commc'ns, Inc.*, 763 F. App'x 53, 56 (2d Cir. 2019) ("Since Plaintiffs' substantive RICO claim is deficient, Plaintiffs' RICO conspiracy claim also fails.") (citing *Discon*, 93 F.3d at 1064); *Satinwood*, 385 F.3D at 164 (affirming the dismissal of RICO conspiracy claims "because Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims [which were properly dismissed]"). Here, the Complaint merely "incorporates its prior [substantive RICO] claims and simply adds the further allegation that" Polar conspired to perpetrate the alleged misconduct, which the Second Circuit held is

inadequate to state a RICO conspiracy claim.  *Discon*, 93 F.3d at 1064.  On this basis, Count

Two must be dismissed.

## VI.    COUNTS THREE, FOUR, AND FIVE (FRAUD, AIDING AND ABETTING, AND CONSPIRACY) MUST BE DISMISSED BECAUSE COD FAILS TO PLEAD FRAUD WITH SUFFICIENT PARTICULARITY

Rule 9(b)'s heightened pleading standard applies to all allegations of fraud, including

common law fraud, aiding and abetting fraud, and conspiracy to commit fraud, which here

merely rely on the same allegations as COD's wire fraud claim.  *See Lerner*, 459 F.3d at 290; *see

also Rombach*, 355 F.3d at 170; *Nat'l Union Fire Ins. Co. v. Archway Ins. Servs. LLC*, No. 11

Civ. 1134 (WHP), 2012 WL 1142285, at *3 (S.D.N.Y. Mar. 23, 2012).  For the same reasons

that the RICO counts must be dismissed for failure to comply with Rule 9(b)'s heightened

pleading standard for fraud, so too must the New York common law fraud, aiding and abetting

and conspiracy claims be dismissed.  *See, e.g.*, *Inspired Cap., LLC v. Conde Nast*, 803 F. App'x

436, 440 (2d Cir. 2020) ("The district court also did not err in dismissing plaintiffs' aiding and

abetting fraud and conspiracy fraud claims because . . . the complaint [did not] satisf[y] the

heightened pleadings standard for fraud claims under [Rule] 9(b)."); *S.Q.K.F.C., Inc. v. Bell Atl.

TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996) ("the district court correctly dismissed

[the] RICO and common law fraud claim" because the plaintiff "failed to meet the heightened

pleading standards of Rule 9(b)").

## VII.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER COD'S COMMON LAW CLAIMS

Because its RICO claims must be dismissed for the reasons discussed above and COD

does not, and cannot, plead federal diversity jurisdiction between these two New York

companies, this Court should decline to exercise supplemental jurisdiction over, and by

extension dismiss under Fed. R. Civ. P. 12(b)(1), COD's common law claims (Counts Three

through Eight).  *See* 28 U.S.C. § 1367(c)(3).  While district courts have discretion to exercise supplemental jurisdiction over state law claims, courts routinely decline to do so where the federal claims are dismissed before trial and in particular where, as here, no pre-trial proceedings have taken place.  *See, e.g.*, *Satinwood*, 385 F.3d at 182-83 (affirming the district court's decision not to "exercise supplemental jurisdiction over Plaintiffs' state law claims after dismissing Plaintiffs' RICO claims prior to trial"); *Bongiorno v. Baquet*, No. 20-CV-7288 (LJL), 2021 WL 4311169, at *22 (S.D.N.Y. Sept. 20, 2021) ("[T]aking into account the dismissal of Plaintiffs' RICO claim at this early stage of litigation, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims . . . [which are] therefore dismissed . . . .").  For these reasons, Counts Three through Eight should be dismissed.

## VIII.   CONCLUSION

For the foregoing reasons, Polar respectfully submits that the Complaint against it should be dismissed in its entirety with prejudice.

Dated:  January 20, 2023

Respectfully submitted,

/s/ Benjamin Gruenstein
**CRAVATH, SWAINE & MOORE LLP**
J. Wesley Earnhardt
Benjamin Gruenstein
Lindsay J. Timlin
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
wearnhardt@cravath.com
bgruenstein@cravath.com
ltimlin@cravath.com

*Attorneys for Defendant Polar Air Cargo
Worldwide, Inc.*

20